**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**


| | | |
|---|---|---|
| STEWART KRAMER AND VALERIE CONICELLO | : | No. 103 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 726 EDA 2021 dated |
| v. | : | December 2, 2021, reconsideration |
| | : | denied February 10, 2022, Affirming |
| | : | the Order of the Montgomery County |
| NATIONWIDE PROPERTY AND CASUALTY | : | Court of Common Pleas, Civil |
| INSURANCE CO. AND LAURIE CRUZ, | : | Division at No. 2020-17901 dated |
| ADMINISTRATOR FOR THE ESTATE OF | : | February 19, 2021 |
| MICHAEL T. MURPHY, JR., DECEASED, | : | |
| AND ADAM KRAMER | : | ARGUED: September 12, 2023 |
| | : | |
| | : | |
| APPEAL OF: NATIONWIDE PROPERTY | : | |
| AND CASUALTY INSURANCE COMPANY | : | |


**OPINION**


**JUSTICE DONOHUE** **DECIDED: April 25, 2024**

The Court of Common Pleas of Montgomery County ("trial court") granted summary judgment in favor of Stewart Kramer and Valerie Conicello ("Parents"), ordering Nationwide Property and Casualty Insurance Company ("Nationwide") to defend Parents under their homeowners insurance policy ("the Policy") against wrongful death and survival actions (together "Underlying Lawsuit") involving the fatal drug overdose of Michael T. Murray, Jr. ("Decedent") at Parents' home. The Superior Court affirmed based on an interpretation of the Policy that was not espoused by the trial

court.  Because we conclude that its interpretation was erroneous as a matter of law, we reverse the decision of the Superior Court.

**I.  Background**

**A.  Pertinent Policy Provisions**

The relevant provisions of the Policy are as follows:

> ***Section II Liability Coverages***
>
> *        *        *        *
>
> ***Coverage Agreements***
>
> **COVERAGE E – PERSONAL LIABILITY**
>
> **We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.  **We** will provide a defense at **our** expense by counsel of **our** choice.  **We** may investigate and settle any claim or suit.  **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

The Policy, Section II, at G1 (emphasis in original) (hereinafter "Coverage E").

The Policy defines "occurrence" for purposes Section II liability coverages as follows:

> "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition.  The **occurrence** must be during the policy period.

*Id.* (emphasis in original).

The Policy further defines "bodily injury" for purposes Section II liability coverages as follows:

> "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death.  **Bodily injury** does not include emotional distress, mental anguish,

> humiliation, mental distress or injury, or any similar injury
> unless the direct result of bodily harm.

*Id.* (emphasis in original).

There are also several liability exclusions applicable to Coverage E set forth in the Policy; pertinent here is 1.m), the controlled substance exclusion:

> ### *Liability Exclusions*
>
> 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to **bodily injury** or **property damage**:
>
> > *       *       *       *
>
> > m)  resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A. Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.
>
> > This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

The Policy, Section II, H1-H2 (emphasis in original) (hereinafter "controlled substance exclusion").

## B.  The Underlying Complaint

Decedent's mother, Laurie Cruz ("Mother"), acting in her capacity as the administrator of Decedent's estate, sued Parents and their son, Adam Kramer ("Kramer"), in the Underlying Lawsuit.  Mother averred the following facts in the complaint:  While Parents were away, Decedent stayed with Kramer at Parents' home on the evening of September 4, 2018.  Mother's Complaint, 9/15/2020, ¶¶ 21-22, 26. Mother and Decedent knew that Kramer used and distributed narcotics.  *Id.* ¶ 23.  In the early morning hours of September 5, 2018, first responders discovered Decedent dead upon their arrival at Parents' home.  *Id.* ¶ 23.  The Montgomery County Coroner's Office

ultimately determined that his cause of death was a drug overdose triggered by a combination of fentanyl, heroin, and benzodiazepines. *Id.* ¶ 28.

Count I of Mother's complaint in wrongful death contends that Parents entrusted Kramer with their home when they knew or should have known that he used and distributed narcotics. *Id.* ¶¶ 31-32. Mother asserted that Parents, with that knowledge, breached a duty of care owed to all invitees, including Decedent, by entrusting their property to Kramer, who permitted access to and use of controlled substances by Decedent, while on Parents' property. *Id.* ¶¶ 33-34. Mother averred that, but for Kramer's grant of access to the controlled substances to Decedent he would not have died, and the harm to Decedent was foreseeable. *Id.* ¶¶ 35-36. Based on these averments, Mother sought damages under Pennsylvania's Wrongful Death Act[1] in excess of fifty-thousand dollars.

Count II of Mother's complaint asserted a survival action[2] against Parents and Kramer. She alleged that Parents and Kramer owed a duty of care to Decedent within their home and that they breached that duty when Decedent was afforded access to controlled substances through Kramer. *Id.* ¶¶ 42-44. Mother again claimed that this breach was the but-for cause of Decedent's death, that his resulting death was foreseeable, and that it constituted negligence per se because of the illegality of the drugs. *Id.* ¶¶ 45-47. Mother alleged that as a result of the breach of Parents' duty of care, Decedent sustained pain and suffering before his death. Mother sought judgment against Kramer and Parents in an amount exceeding fifty-thousand dollars. *Id.* ¶ 48.

---

[1]  42 Pa.C.S. § 8301 ("Death action").

[2]  42 Pa.C.S. § 8302 ("Survival action").

## C. Declaratory Judgment Action

Parents tendered the complaint to Nationwide for coverage under the Policy. Nationwide issued a denial of coverage letter to Parents, prompting them to file a declaratory judgment action requesting the trial court to order Nationwide to defend them against the Underlying Lawsuit. Declaratory Judgment Complaint ("DJC"), 11/2/2020, ¶ 16. In its denial of coverage letter, Nationwide relied on the controlled substances exclusion.[3] Denial of Coverage Letter, 10/6/2020, at 3 (attached to the DJC as Exhibit C). Parents alleged that Nationwide "breached its contractual and statutory obligations … by failing to provide them a defense" to the Underlying Lawsuit. DJC, ¶ 24. Parents argued against the applicability of any exclusion in the Policy and reiterated their request that the trial court declare that Nationwide had a duty to defend Parents in the Underlying Lawsuit.[4]

Nationwide filed an answer and new matter, maintaining that it properly denied both a defense and indemnity under the Policy based on the controlled substance exclusion. Answer, 11/20/2020, ¶ 16. Nationwide acknowledged that no Pennsylvania court had yet addressed the controlled substances exclusion but noted its application in a sister state and argued for its application here.[5] Both parties sought summary judgment.

---

[3] Nationwide originally also relied on the Policy's criminal act exclusion, but it abandoned that theory during litigation before the trial court. Trial Court Opinion, 5/13/2021, n.2.

[4] Parents also raised a breach of contract claim that is not the subject of the instant appeal.

[5] *See Massachusetts Prop. Ins. Underwriting Ass'n v. Gallagher*, 911 N.E.2d 808 (Mass. App. Ct. 2009) (applying a similarly worded exclusion, thereby relieving the insurer of its duty to defend, in circumstances where the decedent intentionally overdosed on propoxyphene in the insured's home where it was alleged that the insured negligently left his prescription unattended despite the decedent's fragile emotional state).

The trial court granted summary judgment in favor of Parents and ordered Nationwide to provide them with a defense to the Underlying Lawsuit, and Nationwide filed a timely appeal. In its Pa.R.A.P. 1925(b) statement, Nationwide asserted that the trial court erred by not enforcing the Policy's controlled substances exclusion. Pa.R.A.P. 1925(b) Statement, 4/9/2021, at 1-2. In its Pa.R.A.P. 1925(a) opinion, the trial court rejected Nationwide's claim of error:

> The [U]nderl[y]ing [L]awsuit acknowledges that [P]arents were out of town on the night of [D]ecedent's death. The theories of liability asserted against them are grounded in negligence. They are alleged to have negligently entrusted their home to their son, they are alleged to have known or should have know[n] of their son's involvement with controlled substances, and they are alleged to have had, and breached, a duty of reasonable care to an invitee at their home. These allegations are distinct from injuries "resulting from" the use or delivery of controlled substances. As [Parents] argue in their summary judgment filings, they have been named in the underlying action because of their alleged breach of duty of care to an invitee to their home. The negligence theories asserted against them, therefore, fall within the [P]olicy's coverage. As such, Nationwide must provide a defense to [P]arents "until it could confine the [underlying] claim to a recovery excluded from the policy." (citations omitted).

Trial Court Opinion, 5/13/2021, at 6.

## II. Decision Under Review

Nationwide appealed and the Superior Court affirmed on alternative grounds in a published opinion. *Kramer v. Nationwide Prop. & Cas. Ins. Co.*, 271 A.3d 431 (Pa. Super. 2021), *appeal granted*, 286 A.3d 711 (Pa. 2022).

The Superior Court summarized the Underlying Lawsuit as alleging that at the time Kramer hosted Decedent at Parents' home, Kramer was "widely known to use and sell controlled substances[;]" that Kramer "was negligent in supplying Decedent with the drugs that caused his overdose[;]" and that Parents were negligent "in allowing Kramer

to use their home for such illicit activities." *Id.* at 433. The wrongful death count included a demand for damages by the beneficiaries of the Decedent's estate including Mother and the survival action included a demand for Decedent's damages for pain and suffering prior to his death. *Id.* at 434.

In light of the allegations and prior to interpreting the Policy to determine whether Nationwide had a duty under it to provide Parents with a defense against the Underlying Lawsuit, the Superior Court restated the provisions of the Policy upon which the parties relied.[6] As to Parents, the lower court cited the language of Coverage E, and as to Nationwide, it cited the controlled substance exclusion. It also set forth the definition of bodily injury from Section II of the Policy. The court did not consider the definition of occurrence from Section II in its analysis. *Id.* at 434.

The Superior Court explained the trial court's reasoning in rejecting the applicability of the controlled substance exclusion was because Parents' "alleged liability in the underlying action was rooted in negligence, which was distinct from the type of occurrence contemplated by the exclusion." *Id.* It recognized that Nationwide's single ground for appeal emanated from the trial court's refusal to find that the controlled substances exclusion relieved it from any duty to defend Parents in the Underlying Lawsuit since the Decedent was alleged to have died solely from the use of heroin, fentanyl, and benzodiazepines. *Id.* However, in framing its analysis, the Superior Court broadly stated the "substantive issue" as whether Nationwide has a duty to defend the Parents in the underlying action. *Id.* at 435.[7]

---

[6] *See* supra at 2-3.

[7] The Superior Court correctly stated the applicable appellate standard of review, indicating that the interpretation of the contractual language in an insurance policy is a pure issue of law subject to a de novo standard of review. *Kramer*, 271 A.3d at 435 n.1 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).

The Superior Court first addressed the claims based on the Parents' negligence in the ownership, maintenance and use of their home. It described Parents' negligence as "allowing their son to supply the Decedent with controlled substances at the residence" and concluded that this is the type of occurrence that would be covered by the Parents' Policy, triggering Nationwide's duty to defend the claims. *Id.* at 436.

Next, focusing on the controlled substances liability exclusion, the court stated that by its terms, the Policy excludes personal liability coverage for bodily injury resulting from the use of controlled substances. *Id.* The panel noted that the Policy defines "bodily injury" as "bodily harm, including resulting care, sickness or disease, loss of service or death."[8] It said that Nationwide "would have no obligation to pay out for such damages if … [P]arents are ultimately found liable for them. Correspondingly, Nationwide would then have no duty to defend with respect to those discrete classes of damages." *Id.*

The Superior Court found, however, that the wrongful death claim is not limited to bodily injury "as such damages are defined in the [P]olicy." *Id.* According to the Superior Court, apparently by extrapolating from the bald claim for wrongful death damages in the Underlying Lawsuit,[9] there is also potentially a claim for other types of damages rooted in "'emotional distress, mental distress or injury, or any similar injury,' none of which would be the direct result of bodily harm to the decedent's family itself."

---

[8] The opinion omits the second sentence of the definition of bodily injury which states: "**Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm." The Policy, Section II, at G1 (definition of bodily injury) (emphasis in original).

[9] The panel cited to *Rettger v. UPMC Shadyside*, 991 A.2d 915, 922 (Pa. Super. 2010) (recognizing that in a wrongful death suit, a family may recover for its emotional and psychological loss). *Kramer*, 271 A.3d at 436.

*Id.*[10]  Because these types of damages do not fall under the ambit of the Policy's bodily injury definition, the panel determined that the Policy's controlled substance exclusion, which excludes coverage for bodily injury resulting from the use of controlled substances, does not apply to those damages.  *Id.*

We granted Nationwide's petition for allowance of appeal to determine whether the Superior Court incorrectly ruled that emotional distress damages are covered under an insurance policy providing liability coverage only for bodily injury, where the policy explicitly excludes emotional distress from the definition of bodily injury.  *Kramer v. Nationwide Prop. & Cas. Ins. Co.*, 286 A.3d 711 (Pa. Oct. 18, 2022) (per curiam).

### III.  Argument of the Parties

Nationwide contends that the Superior Court erred as a matter of law by construing the Policy to cover emotional distress damages purportedly claimed by Mother.  Nationwide's Brief at 20.  Nationwide maintains that the Policy only permits coverage for bodily injury, and that the mutual understanding of the parties when they filed cross-motions for summary judgment in the trial court was that they were contesting whether the otherwise-covered bodily injury claims set forth in the Underlying Lawsuit were subject to the controlled substance or criminal act exclusions.  *Id.* at 25.[11]

---

[10]  The limiting language is apparently derived from the definition provided for "bodily injury" in Section II of the Policy.  *See* supra at 2-3.

[11]  We agree with Nationwide's characterization of the record in this regard.  In their motion for summary judgment, Parents averred that there was "no dispute" that "Decedent suffered bodily injury from an accident" while on their property and, therefore, that Decedent's bodily injury qualified as an occurrence within the terms of the Policy. Parents' Motion for Summary Judgment, 12/15/2020, ¶¶ 16-18.  Parents argued that the criminal act and controlled substances coverage exclusions did not apply despite Nationwide's invocation of those provisions.  *Id.*  ¶¶ 33-64 (arguing that the controlled substances exclusion did not apply by operation of the severability clause because, inter alia, the negligence alleged against Parents pertained to the negligent entrustment of their home to Kramer, not from the use, sale, manufacture, delivery, transfer or possession of a controlled substance).

Nationwide believes that once the Superior Court determined that emotional distress claims did not fall within the definition of bodily injury, its inquiry was at an end regarding whether Nationwide had a duty to defend, because the Policy "does not potentially cover non-'bodily injury' emotional distress claims." *Id* at 30. Nationwide contends that because the Superior Court determined that the alleged emotional distress claims did not constitute bodily injury, the potential for damages on such claims fell outside the Policy's scope of coverage.[12] Thus, Nationwide maintains it was immaterial whether the controlled substance exclusion—or any exclusion—applied, because the Superior Court's conclusion that "Nationwide would be obligated to pay out on the covered portions of the underlying claims if the parents are ultimately found liable" was a non sequitur that constituted legal error. *Kramer*, 271 A.3d at 437.

Parents maintain that the Superior Court "correctly ruled that emotional distress damages are covered" under the Policy and that it "does not limit coverage only to bodily injury." Parents' Brief at 2. Parents argue that a bodily injury "is the triggering event requiring insurance coverage" and, therefore, Decedent's death triggered the Policy's coverage because it occurred on Parents property and because they were sued via wrongful death and survival actions due to that death. *Id.* at 3. They contend that Nationwide is obligated, under the Policy's definition of bodily injury, to pay for "emotional distress and mental damages as a direct result of" that bodily harm and, therefore, "provide [them] a defense for the lawsuit." *Id.* at 3-4. Parents aver that our allocatur grant "misconstrues a 'bodily injury' as a scope of coverage limitation when it in fact is the trigger for coverage." *Id.* at 5. Parents contend that their triggering-event

---

[12] Moreover, Nationwide contends that this Court has not been asked to determine whether the emotional distress at issue could constitute bodily injury under the policy, nor whether the controlled substance exclusion applies. Nationwide's Brief at 31-32.

interpretation is supported by other language in the Policy, such as the definition of "bodily injury" itself, which Parents assert excludes emotional distress as a triggering event, but not emotional distress damages if they are the direct result of a "bodily injury." *Id.* at 6. However, in their brief, Parents do not advance the trial court's rationale for finding that Nationwide had a duty to defend.

Parents dispute that the Superior Court ruled on the applicability of the controlled substances exclusion to the bodily injury to Decedent, arguing that the Superior Court in fact ruled on an alternative ground in concluding that Nationwide owed a duty to defend. *Id.* at 9. As such, they characterize the Superior Court's discussion of the exclusion as dicta. *Id.* In any event, Parents alternatively assert that they would be prejudiced by a decision by this Court that reaches the controlled substance exclusion because, as the prevailing party below, Parents were not an aggrieved party (as the Superior Court had ruled that Nationwide had a duty to defend) and, therefore, they had no opportunity to appeal the Superior Court's application of the controlled substances exclusion to the bodily injury damages alleged in the Underlying Complaint. *Id.* at 10.

Nationwide disagrees that the Superior Court's analysis of the controlled substances exclusion was dicta. Nationwide's Reply Brief at 10-11. Nonetheless, Nationwide does not dispute that the procedural posture of this case deprived Parents of their right to seek review from an adverse decision on Nationwide's duty to defend premised on the applicability of the controlled substances exclusion. *Id.* at 11-12. Accordingly, Nationwide recommends that this Court remand for the Superior Court to enter judgment in favor of Nationwide, thereby permitting Parents an opportunity to file a petition for allowance of appeal. *Id.* at 12.

## IV. Analysis

This appeal involves the interpretation of an insurance policy to determine its scope of coverage insofar as it implicates the insurer's duty to defend a policy holder facing litigation. The texts of the Policy and Mother's complaint are the undisputed facts of record. Thus, this matter presents a pure question of law subject to a plenary scope of review and a de novo standard of review. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014).

An insurance policy is a contract; as such, the overarching goal of our interpretation of an insurance policy is to ascertain the intent of the parties "as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). In doing so, we are bound by the clear and unambiguous meaning of the policy; however, we are obligated to construe ambiguities "in a light most strongly supporting the insured." *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 351 (Pa. 1974). Ambiguity exists where the policy's terms are reasonably susceptible to multiple interpretations based on the "plain and ordinary" meaning of the policy's language. *St. John*, 106 A.3d at 14. The plain and ordinary meaning of a policy is also contextually constrained, as our understanding of the mutual intent of the parties in forming the insurance contract derives from consideration of the whole written instrument, not by reading its individual provisions in isolation. *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997) (stating that "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument").

"An insurer's duty to defend is broader than its duty to indemnify[.]" *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015). The duty to defend arises when a complaint, on its face, alleges an injury that is at least potentially within an insurance policy's scope of coverage. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.,*

*Inc.*, 2 A.3d 526, 541 (Pa. 2010). When "an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

Our analysis begins with an examination of the pertinent Policy provisions. The Underlying Lawsuit pleaded wrongful death and survival actions, both claims sounding in negligence premised on Parents' alleged breach of a duty of care owed to Decedent, occasioned by the negligent entrustment of their property to Kramer on the evening of Decedent's overdose death. In the wrongful death claim, Mother asserted damages in an amount exceeding fifty-thousand dollars as compensation for Decedent's wrongful death. The damages were not further delineated. Mother's Complaint, 9/15/2020, at 5-6. In the survival action, Mother asserted damages for Decedent's "sustained pain and suffering prior to his untimely death[,]" also in an amount exceeding fifty-thousand dollars. *Id.* at 7.

The Policy defines the scope of Parents' personal liability coverage as follows:

### COVERAGE E – PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

Coverage E (emphasis in original). An "occurrence" under the Policy "means **bodily injury** … resulting from an accident, including continuous or repeated exposure to the same general condition." *Id.* (emphasis in original). Bodily injury, in turn, "means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily**

**injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm." *Id.* (emphasis in original).

Even if a claim falls within the scope of personal liability coverage defined in Coverage E, there are a multitude of exclusions from liability in the Policy. Pertinent here, Coverage E does not apply to bodily injury:

> m) resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A. Sections 811 and 812). Controlled substances include but are not limited to: [C]ocaine; LSD; marijuana; and all narcotic drugs.

Controlled Substances Exclusion.

Although this case was litigated in the trial court on the applicability of this exclusion, the Superior Court's analysis renders the controlled substance exclusion irrelevant. The Superior Court's conclusion that Mother did not suffer bodily injury obviates coverage under the Policy provisions that control when Nationwide is obligated to pay (and thus defend). Reduced to its essence, as relevant to this appeal, Nationwide's obligation arises only when there is an occurrence. An occurrence requires a bodily injury. A bodily injury, by definition under the Policy, does not include emotional distress or similar injury unless the direct result of bodily harm. The Superior Court's determination that Mother did not suffer a bodily injury as defined in the Policy for purposes of the wrongful death claim requires a conclusion that there is no coverage for the wrongful death claim. Therefore, the Superior Court's interpretation that Nationwide was potentially required to pay out for Mother's emotional and mental distress damages for that wrongful death claim is contrary to the unambiguous provisions of the Policy and erroneous as a matter of law.

We accept solely for the limited purposes of our analysis that Mother actually claimed her own emotional and mental injuries in her wrongful death action and that such damages are recoverable in a wrongful death action. Mother alleged that, "[p]ursuant to the Pennsylvania Wrongful Death Act, Decedent's wrongful death results in damages to the beneficiaries of Decedent's Estate, including [Mother]." Mother's Complaint, 9/15/2020, ¶ 38. Generally, "[w]rongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for **pecuniary loss** they have sustained as a result of the death of the decedent." *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994) (emphasis added). "The damages recoverable in a wrongful death action include the present value of the **services** the deceased would have rendered to the family, had she lived, as well as funeral and medical expenses." *Id.* (emphasis added).

The Superior Court, relying on dicta in *Rettger v. UPMC Shadyside*, 991 A.2d 915, 922 (Pa. Super. 2010), stated "that in a wrongful death suit, a family may recover for its emotional and psychological loss[,]" and extrapolated from Mother's complaint that she was potentially seeking damages for mental and emotional distress under the auspices of her wrongful death claim. *Kramer*, 271 A.3d at 436. This Court has never addressed whether mental and emotional distress injuries to surviving family members are compensable under the current version of the Pennsylvania Wrongful Death Act. We explicitly declined to address a similar question in *Department of Public Welfare v. Schultz*, 855 A.2d 753, 754 (Pa. 2004) (stating that we would not "resolve the issue of whether the Wrongful Death Act, outside the context of sovereign immunity, permits

recovery of" non-pecuniary damages "in a suit against a private party"), and we do not address the issue in this appeal given the narrow question granted for our review.[13]

## V. Parents' Remand Request

Anticipating the possibility of reversal of the Superior Court's decision, Parents included a request for remand to the Superior Court for the entry of an order in favor of Nationwide so that they can file a petition for allowance of appeal from that order. Parents' Brief at 11-12. Although not opposed by Nationwide, Parents have failed to demonstrate that they are entitled to such relief, particularly in light of our decision in *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman*, *P.C.*, 137 A.3d 1247 (Pa. 2016).

Here, the trial court found that Nationwide had a duty to defend Parents in the Underlying Lawsuit based on the allegations in both the wrongful death and survival actions that Decedent's overdose death resulted from Parents' negligent entrustment of the insured premises to Kramer, who provided the drugs to Decedent, and that these negligence theories fell within the Policy's coverage. The trial court found these allegations are distinct from injuries "resulting from" the use or delivery of controlled substances as encompassed by the controlled substances exclusion contained in the Policy and thus, that Nationwide had a duty to defend. On appeal, Nationwide claimed that this was error because the exclusion, "which excludes coverage for bodily injury resulting from the use of a controlled substance, precludes such a defense where the

---

[13] For this reason, we also do not address Parents' alternative argument that bodily harm is a triggering event for coverage under the Policy. Interpreting Coverage E and the definition of bodily harm in Section II, they contend that Nationwide must pay any and all damages due to the death of Decedent, including emotional distress and mental damages "as a direct result of bodily harm." Following the Superior Court's lead, Parents interpret this latter phrase to include emotional and mental distress damages suffered by Parents as a result of Decedent's death as part of the wrongful death action. *See* Parents' Brief at 3.

Decedent in the underlying action was alleged to have died solely from the use of heroin, fentanyl and benzodiazepines." Nationwide's Superior Court Brief at 4.

In this case of first impression dealing with the controlled substances exclusion, the Superior Court did not address the trial court's reasoning that bodily injuries resulting from the negligent entrustment were distinct from injuries resulting from the use of controlled substances, thereby triggering coverage. However, it did hold, albeit without explanation, that the controlled substances exclusion applied to the survival action in its entirety and to the wrongful death action except, as discussed, to damages for emotional and mental distress. *Kramer*, 271 A.3d at 436. The Superior Court based its conclusion that Nationwide had a duty to defend Parents in the Underlying Lawsuit on the claim for emotional and mental distress it found embedded in the wrongful death action. Thus, it affirmed the trial court's summary judgment order granting Parents a declaratory judgment as to Nationwide's duty to defend, but on alternative grounds. *Id.* at 437. Nevertheless, the Superior Court's erroneous theory was contingent upon its preliminary holding that the controlled substances exclusion applied to the damages sought in the Underlying Lawsuit for Decedent's overdose death.[14]

Parents assert that they were not aggrieved by the Superior Court's decision because it concluded that Nationwide had a duty to defend against the Underlying Lawsuit. As a result, Parents maintain they have been denied the opportunity to challenge the Superior Court's determination that the controlled substances exclusion applied to the survival and wrongful death actions insofar as those claims sought

---

[14] The Superior Court had no reason to assess the applicability of the controlled substance exclusion to emotional and mental distress damages purportedly alleged in Mother's wrongful death claim without first finding that the same exception applied to the explicitly asserted claims for bodily injury the Underlying Lawsuit. Thus, we disagree with Parents that the Superior Court's application of the controlled substances exclusion to the bodily injury damages claims was merely dicta.

damages for bodily injury. Parents cite *In re Estate of Pendergrass*, 26 A.3d 1151 (Pa. Super. 2011), as well as this Court's decision in *Basile v. H&R Block, Inc.*, 973 A.2d 417 (Pa. 2009), for the proposition that because they were not aggrieved by the Superior Court's decision, they did not have the opportunity to seek relief from that decision. Parents' Brief at 10. Both cases relied on by Parents involved appeals governed by the rules applicable to appeals as of right. *See* Pa.R.A.P. 501 (providing a right of appeal to "any party who is aggrieved by an applicable order…"). The *Basile* Court cited, inter alia, the note to Pa.R.A.P. 511 which stated then, as it states now, that an "appellee should not be required to file a cross appeal because the Court below ruled against it on an issue, as long as the judgment granted Appellee the relief it sought." *Id.* (quoting Pa.R.A.P. 511, Note). This Court reached a similar conclusion in a case involving an appeal as of right to this Court in *Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107 (Pa. 2013). Again, *Basile* and *Lebanon Valley* concerned only Rules 501 and 511, which govern appeals as of right and related cross-appeals, respectively.[15] Those decisions have no application here because this matter involves Parents' failure to file a cross-petition for allowance of appeal.

Petitions for allowance of appeal are controlled by Pa.R.A.P. 1111-23. None of the rules applicable to appeals by allowance contain an express aggrievement standard akin to Rule 501. Rule 1112 governs appeals by allowance generally, and Rule 1113 governs the timing of petitions for allowance of appeal. Moreover, Pa.R.A.P. 1113(b) provides as follows:

> **(b) Cross petitions.--**Except as otherwise prescribed in paragraph (c) of this rule, if a timely petition for allowance of appeal is filed by a party, **any other party may file a cross-**

---

[15] To the extent that the text of Rule 511 mentions cross-petitions for allowance of appeal, it does so only to extend the window of time to file a cross-petition following a timely-filed petition for allowance of appeal. *See* note 17, supra.

> **petition for allowance of appeal** within 14 days of the date on which the first petition for allowance of appeal was served, or within the time otherwise prescribed by this rule, whichever period last expires.

Pa.R.A.P. 1113(b) (some emphasis added). This Court addressed the failure to file a protective cross-petition for allowance of appeal in *Meyer Darragh*.

*Meyer Darragh* involved a dispute over attorney's fees. In the trial court, the Meyer Darragh firm brought the action against the Malone Middleman firm, asserting breach of contract and quantum meruit claims. "Both parties filed cross-appeals in the Superior Court, with Malone Middleman challenging the trial court's grant of relief on the quantum meruit claim and Meyer Darragh contending, inter alia, that the trial court erred by denying relief on its breach of contract claim." *Meyer Darragh*, 137 A.3d at 1252. The Superior Court vacated the trial court's order on both grounds. Malone Middleman sought allowance of appeal as to the breach-of-contract claim, which this Court granted. *Id.* at 1249. Meyer Darragh did not file a cross-petition for allowance of appeal.

Important for our purposes here, Malone Middleman argued that Meyer Darragh had "abandoned its quantum meruit claim against Malone Middleman by failing to appeal to this Court the Superior Court's adverse ruling on that claim." *Id.* at 1256.[16] This Court then held "that under the specific facts presented, any recovery that may have been due to Meyer Darragh would lie in quantum meruit, and not breach of contract." *Id.* at 1259. We reversed "the order of the Superior Court, which entered judgment in favor of Meyer Darragh on the breach of contract claim." *Id.*

Two concurring opinions were filed. First, then-Justice Saylor, joined by Justice Dougherty, stated that although he otherwise joined the majority, he was "circumspect

---

[16] This Court added in a footnote that Meyer Darragh did "not attempt to resurrect its quantum meruit claim against Malone Middleman in its brief to this Court." *Meyer Darragh*, 137 A.3d. at 1256 n.9.

concerning the degree to which the present decision may be construed as suggesting, if only implicitly, that Meyer Darragh has abandoned its quantum meruit claim by failing to raise it in its brief or by not filing a protective cross-petition for allowance of appeal." *Id.* at 1259-60 (Saylor, J., concurring). Justice Saylor opined: "It is possible that, in electing not to file a cross-petition for allowance of appeal, Meyer Darragh relied to its detriment upon this Court's pronouncements in *Lebanon Valley* and *Basile*[,]" *id.* at 1260, and he further noted that it "is simply not clear how *Lebanon Valley*'s guidance translates into scenarios, such as this, where remedies are mutually exclusive, and into the discretionary appeals context, where the Court is generally confined according to the issues accepted for review[,]" *id.* at 1260 n.2. Accordingly, Justice Saylor advised that his joinder to the majority opinion in *Meyer Darragh* "should not be construed as foreclosing Meyer Darragh's ability to request nunc pro tunc relief in the form of leave to cross-petition for allowance of appeal in light of today's holding." *Id.* In a separate concurring opinion, then-Justice Todd joined the majority but fully agreed with Justice Saylor's statement "regarding the predicament in which Meyer Darragh finds itself concerning the quantum meruit issue." *Id.* (Todd, J., concurring) (stating she would "expressly permit Meyer Darragh to file a nunc pro tunc cross[-]petition for allowance of appeal" and "refer to the Appellate Rules Committee the question of amendments to our appellate rules which account for the impact of *Lebanon Valley* in the procedural context of this case").

In the aftermath of *Meyer Darragh*, the Appellate Rules Committee amended the note to Rule 511 in 2019, which now reads, in pertinent part:

> An appellee should not be required to file a cross-appeal because the court below ruled against it on an issue, as long as the judgment granted appellee the relief it sought. *See Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107, 112 (Pa. 2013); *Basile v. H & R Block, Inc.*, 973 A.2d 417, 421 (Pa. 2009).

> **If, however, an intermediate appellate court awards different relief than the trial court or other government unit, a party may wish to file a cross-petition for allowance of appeal under Pa.R.A.P. 1112**. *See, e.g., Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman*, P.C., 179 A.3d 1093, 1098 & n.5 (Pa. 2018); *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247 (Pa. 2016).

Pa.R.A.P. 511, Note (emphasis added).[17]

Here, by electing not to file a cross-petition for allowance of appeal, Parents find themselves procedurally in the same position as the appellees in *Meyer Darragh*. That case highlighted the danger of failing to file a cross-petition for allowance of appeal. Despite the Superior Court's holding that Nationwide had no duty to defend claims premised on Decedent's bodily injury damages by application of the controlled substances exclusion, Parents failed to challenge that aspect of the panel's decision by filing a cross-petition for allowance of appeal. Parents' creative attempt at relief is unavailing. A remand to the Superior Court for entry of judgment in favor of Nationwide does not rectify the failure to file a timely cross-petition for allowance of appeal pursuant to Pa.R.A.P. 1113(b). Parents' recourse is to file a nunc pro tunc cross-petition for allowance of appeal in light of our holding.[18]

---

[17] Inexplicably, no version of the second paragraph of this Note, or any reference to *Meyer Darragh*, appears as a Note to Rule 1113 governing the timing of petitions and cross petitions for allowance of appeal. This omission should be addressed by the Appellate Court Procedural Rules Committee.

[18] Our decision today is informed by the opinions filed in *Meyer Darragh* and the distinct standards for cross-appeals and cross-petitions for allowance of appeal as set forth in our Rules of Appellate Procedure. *Meyer Darragh* was fair notice to practitioners of the consequences of the failure to file a cross-petition for allowance of appeal. **None** of the opinions in *Meyer Darragh* suggest the form of relief endorsed in the Concurring Opinion for failure to file a timely cross-petition for allowance of appeal. See Concurring Opinion at 3 (Mundy, J.), (stating "I would grant" the "request to remand the case … for entry of an order entering judgment in favor of Nationwide").
(continued…)

For the reasons stated in our analysis, we reverse the judgment of the Superior Court insofar as it held that Nationwide owed a duty to defend the Underlying Lawsuit because emotional and mental distress damages in the wrongful death claims were not bodily injuries.

## VI. Conclusion

We reverse the judgment of the Superior Court that affirmed the trial courts' order granting Parents' motion for summary judgment and denying Nationwide's motion for summary judgment.

Chief Justice Todd and Justices Wecht and Brobson join the opinion.

Justice Dougherty files a concurring opinion.

Justice Mundy files a concurring opinion.

---

(…continued)

Speaking for himself and Justice Dougherty in *Meyer Darragh*, then-Chief Justice Saylor stated only that "my present joinder should not be construed as **foreclosing** Meyer Darragh's ability to request nunc pro tunc relief in the form of leave to cross-petition for allowance of appeal in light of today's holding." *Meyer Darragh*, 137 A.3d at 1260 (Saylor, J., concurring) (emphasis added). Then-Justice, now Chief Justice Todd indicated that she would "expressly permit Meyer Darragh to file a nunc pro tunc cross petition for allowance of appeal[.]" *Id.* (Todd, J., concurring). Here, we condone the recommendation of the concurring justices in *Meyer Darragh* insofar as we do not foreclose Appellee's opportunity to seek leave to file a nunc pro tunc cross-petition for allowance of appeal.

The Concurring Opinion notes that we have yet to directly "address *Lebanon Valley*'s application in circumstances such as this and we did not accept that issue for review in this case." Concurring Op. at 3 (Mundy, J.). But the concurring opinions in *Meyer Darragh* did question its application and Parents assert their reliance on *Lebanon Valley* and *Pendergrass*, *see* Parents' Brief at 10, without recognizing the red flag raised in *Meyer Darragh* seven years after it was decided. *Lebanon Valley* specifically discussed the previous note to Rule 511, *Lebanon Valley*, 83 A.3d at 112, which now alerts litigants to *Meyer Darragh* and the distinction between cross-appeals and cross-petitions for allowance of appeal. Pa.R.A.P. 511 (Note). This is not a preservation problem; it is a research problem. Moreover, if we did not address the issue at all, Parents only possible recourse would be to file a nunc pro tunc cross-petition for allowance of appeal.